HARLOW REALTY COMPANY *vs.* HOWARD E. WHITING.

Middlesex.     October 9, 1940. — January 29, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Res Judicata. Bankruptcy*, Composition, Findings by referee. *Evidence*, Competency. *Equity Pleading and Practice*, Findings by judge, Appeal.

The mere facts, that a debtor, in his composition proceedings under § 74 of the national bankruptcy act, had objected to the allowance of a creditor's claim on the ground that, in a joint venture not connected with that claim, a sum larger than the claim was due him, and that the referee had dismissed the creditor's claim on that ground, did not preclude the debtor from maintaining a suit for a balance still due him in the joint venture.

A finding by a referee in bankruptcy, in composition proceedings by an insolvent debtor under § 74 of the national bankruptcy act, disallowing a claim by a creditor on the ground that an amount that the creditor owed the debtor as his share of losses in a joint venture far exceeded the creditor's claim, although the referee did not determine the entire amount of the debtor's counterclaim, was *res judicata* binding upon the creditor as to the existence of the joint venture.

In a suit where the effect of a previous decision by a referee in bankruptcy as *res judicata* on an issue involved was in question, testimony by the referee, that in passing on that issue he had found certain facts although he had not recorded them in a court document, was admissible.

Upon an appeal from a final decree in a suit in equity where the record included a voluntary statement by the trial judge of subsidiary findings of fact as to an amount due one of the parties but, by reason of a waiver by the appellant, did not include the evidence, it could not be ruled that such findings were wrong.

BILL IN EQUITY, filed in the Superior Court on December 2, 1937.

The case was heard by *Greenhalge*, J.

The averments of the bill were in substance that the defendant was indebted to the plaintiff under an agreement to pay it rent for certain premises and a percentage of fees and commissions received by him in his business as real estate broker, and that the defendant had refused to permit examination of his books to disclose what his fees and commissions were; and an accounting was sought.

After the institution, following the filing of the bill, of the proceedings in the bankruptcy court described in the opinion, the plaintiff in this suit filed in those proceedings a "proof of unsecured claim" which the judge who heard this suit found set up its claim alleged in the bill. There was no mention of a joint venture in the proof of claim. To this the debtor therein, defendant in this suit, filed an objection and "a brief in which it was asserted that the debtor and the Harlow Realty Company 'were joint adventurers in the general contracting business and in the erection of a house in Watertown; that this business was carried on in the name of Howard E. Whiting, the debtor, for the mutual interest of both parties; that the business has resulted in a loss; that the share of the loss which shall fall upon the Harlow Realty Company far exceeds the amount of their alleged claim.'" It was the issue thus raised that was heard by the referee in bankruptcy.

*W. E. Bennett*, for the plaintiff.

*J. J. Krohn*, for the defendant, submitted a brief.

Cox, J. The plaintiff, on December 2, 1937, brought this bill in equity against the defendant for an accounting. The defendant's answer, filed January 24, 1938, admitted that he and the plaintiff entered into a contract as evidenced by the letters referred to in the bill, and, in addition to denying that anything was due from him thereon, also filed a counterclaim, allegedly based upon a joint adventure that was apart from the subject matter of the alleged contract. On January 7, 1938, the defendant filed in the District Court of the United States for the District of

Massachusetts a petition under § 74 of the bankruptcy act (U. S. C. [1934 ed.] Title 11, § 202), then in force, for a composition in which the plaintiff was listed as a creditor. (See act of June 22, 1938, c. 575; 52 U. S. Sts. at Large, 840; U. S. C. Title 11, § 1.) After proceedings in the bankruptcy court, amendments to the defendant's answer and counterclaim were allowed, as was an amendment to the plaintiff's answer to the counterclaim as amended. In substance, the defendant's contentions were that the proceedings in bankruptcy were a "final determination of the same issues raised by the plaintiff's bill and the defendant's answer . . . and such issues are *res adjudicata* in favor of defendant," and that the issues raised by the counterclaim and heard and determined by the referee in bankruptcy had become *res adjudicata* except as to the amounts due from the plaintiff to the defendant. The plaintiff's contentions were that there was no joint enterprise, that "liability of the plaintiff to the defendant upon said counterclaim was not determined [in the bankruptcy court] and did not become *res adjudicata*," and that if it should appear that the issues raised by the counterclaim were heard and determined by the referee in bankruptcy and became *res adjudicata*, "then the defendant has made an election to use said issues as a defence to the plaintiff's cause of action and cannot now use said matters to establish a cause of action against the plaintiff."

The case was tried by a judge of the Superior Court who filed a statement of his findings, rulings and order for decree. Apparently these findings were made voluntarily and not under G. L. (Ter. Ed.) c. 214, § 23. It was agreed before him that the claim of the plaintiff was barred by the proceedings in the bankruptcy court, "and the case went forward on the defendant's counterclaim as amended." The judge stated: "Without reporting in detail the evidence offered on the question of joint enterprise, which is to be reported, I am satisfied that the defendant failed to establish his claim and if I am free to do so, I find that there was no joint enterprise and consequently no liability upon the part of the . . . [plaintiff]." From the statement

of the judge, it appears that there was a hearing before the referee in bankruptcy on the plaintiff's claim, and also on the defendant's counterclaim, and that on December 28, 1938, the plaintiff's claim was disallowed in full. From the evidence of what took place at that hearing, and the inferences drawn therefrom, the judge found that the referee did decide that there was a joint adventure or enterprise and that his decision or finding was material to the final determination to disallow the claim, although it may not have been the only issue presented to him or considered by him in reaching that decision; that the existence of the joint enterprise was essential to the final conclusion of the referee that the indebtedness of the plaintiff to the defendant exceeded his indebtedness to it "which was the basis of his order," and he ruled that the referee's conclusion "is decisive in this case in favor of the defendant upon that issue"; that the finding of the referee was general; and that he did not determine specifically either "what the joint venture included or how great was the indebtedness of the . . . [plaintiff] which resulted from it." He found that there were three "ventures" included in the "joint adventure," and that the plaintiff was indebted to the defendant for one half of the losses incurred in these three ventures and also for one half of payments to judgment creditors under the composition in the bankruptcy court. He disallowed one claim of the defendant, and a final decree was entered which states the amounts due from the plaintiff to the defendant and dismisses without prejudice two of his claims. The plaintiff appealed from this final decree.

There was an order that the stenographer report the testimony, Rule 76 of the Superior Court (1932), but the plaintiff, in writing, waived the printing of the evidence on its appeal. See *Wyness* v. *Crowley*, 292 Mass. 459; *Hubbard* v. *Southbridge National Bank*, 297 Mass. 17, 19. In the circumstances, entry of the decree imports a finding of every fact essential to sustain it and within the scope of the pleadings. *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 561, 562, and cases cited. *Council* v. *Cohen*, 303 Mass. 348, 351. See *Topor* v. *Topor*, 287 Mass. 473, 476. The

plaintiff, however, is not precluded from contending that the findings specifically stated by the judge are necessarily inconsistent in themselves with the general conclusion reached. *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 562, and cases cited.

The plaintiff contends that the issue in the bankruptcy court was not only whether a joint enterprise existed, but if it did, what was its extent; stated a little differently, that it was the duty of the referee to find the amount of the defendant's debt to the plaintiff and then to consider whether there was a joint enterprise, and if it appeared that there was, then to determine just what, if anything, the plaintiff owed the defendant; in other words, that it was the duty of the referee to state the accounts fully and finally. The plaintiff, however, concedes that the referee's decision disposed of its claim. It is not contended that it was not within the power of the referee to determine the status of the plaintiff's claim. See §§ 38 and 39 of the bankruptcy act, U. S. C. [1934 ed.] Title 11, §§ 66 and 67; *Durrance* v. *Collier*, 81 Fed. (2d) 4; *In re Adamson*, 83 Fed. (2d) 211, certiorari denied *sub nomine Adamson* v. *Adamson*, 299 U. S. 554; *In re Gunder*, 88 Fed. (2d) 284, certiorari denied *sub nomine 164 East 72nd Street Corp.* v. *Gunder*, 301 U. S. 701; *Corden Corp.* v. *Williams*, 93 Fed. (2d) 758, certiorari denied *sub nomine Williams* v. *Corden Corp.* 303 U. S. 659. It is not contended that the subject matter of the defendant's claim was not proper as the basis for set-off or counterclaim against the plaintiff's claim. See § 68 of the bankruptcy act, U. S. C. (1934 ed.) Title 11, § 108; Rule 32 of the Superior Court (1932); *In re Harper*, 175 Fed. 412; *In re American Paper Co.* 243 Fed. 753; *Cumberland Glass Manuf. Co.* v. *De Witt & Co.* 237 U. S. 447. It is unnecessary to consider in detail the provisions of said § 74 of the bankruptcy act. In general, it provided that a debtor, allegedly insolvent or unable to meet his debts as they matured, might petition for a composition or an extension of time within which to pay his bills. If a composition was confirmed, the consideration was distributable as the court directed, and the case was dis-

missed subject to some provisions as to the payment of debts having priority. If the debtor failed to comply with any of the terms required of him, or if for several reasons the composition failed, the court might appoint a trustee to liquidate the estate, and in addition, under certain conditions, was required to adjudge the debtor a bankrupt.

In the case at bar, no petition was filed for review of the order of the referee disallowing the plaintiff's claim, and although it is not specifically found as a fact by the judge that the proposal for composition was confirmed, we think it follows from what was said by him in his statement that it was. At the time of the hearing by the referee on the plaintiff's claim, there was no occasion to disturb the defendant in the possession of his assets, or to take over the collection of any claims that he might have against others in his capacity as a creditor. In short, the time never arrived when it was necessary to adjudge the defendant a bankrupt or to appoint a trustee to liquidate the estate.

But the plaintiff contends that the case at bar is governed by the principle of law stated in *O'Connor* v. *Varney,* 10 Gray, 231, whereby a judgment for a defendant in an action for work done under a contract upon the ground of imperfect performance is a bar to a subsequent action by him to recover damages for such nonperformance. The reason for this, as given by Shaw, C.J., is that a party against whom an action is brought "on a contract has two modes of defending himself. He may allege specific breaches of the contract declared upon, and rely on them in defence. But if he intends to claim, by way of damages for nonperformance of the contract, more than the amount for which he is sued, he must not rely on the contract in defence, but must bring a cross action, and apply to the court to have the cases continued so that the executions may be set off. He cannot use the same defence, first as a shield, and then as a sword." *Merriam* v. *Woodcock,* 104 Mass. 326, and cases cited. The rule stated in the *O'Connor* case is generally accepted. See 83 Am. L. R. 642. But it

seems to be based upon the right of a defendant to recover an affirmative judgment upon his claim, and, where that right does not exist, it has been held that the law will not deny him the right to maintain a subsequent action for any balance due over and above the amount that may have been allowed as an offset. *Nut House* v. *Pacific Oil Mills*, 102 Wash. 114. *State* v. *Superior Court for King County*, 113 Wash. 439. *Ladd & Tilton Bank* v. *Rosenstein*, 122 Wash. 301. *Gordon* v. *Van Cott*, 38 App. Div. (N. Y.) 564. *East Forty-sixth Street Realty Corp.* v. *Max Gutschneider, Inc.* 103 Misc. (N. Y.) 491. See *D. M. Osborne & Co.* v. *Williams*, 39 Minn. 353.

The parties to the proceeding to determine whether the plaintiff had a claim that would entitle it to payment in accordance with the compromise offer were, in effect, the plaintiff and the defendant. The jurisdiction and duties of a referee in bankruptcy (bankruptcy act, §§ 38 and 39) have already been referred to. There are decisions of the Federal courts to the effect that there cannot be any judgment in bankruptcy proceedings against the claimant where the estate's offset exceeds the creditor's claim, and that the trustee must seek his remedy by plenary action. *In re Bowers*, 33 Fed. Sup. 965, 967, and cases cited. *Fitch* v. *Richardson*, 147 Fed. 197. *In re T. M. Lesher & Son*, 176 Fed. 650. *In re Continental Producing Co.* 261 Fed. 627. *In re Patterson-MacDonald Shipbuilding Co.* 284 Fed. 281, 283 and cases cited, *S. C.* 293 Fed. 192. Compare *Florance* v. *Kresge*, 93 Fed. (2d) 784, 786. See *Alexander* v. *Hillman*, 296 U. S. 222. Whatever may be the true rule where there have been an adjudication of bankruptcy and an appointment of a trustee, we are of opinion that, in the case at bar, not only was the referee not required to determine the amount of the defendant's counterclaim, but also the defendant was not entitled to have that amount determined in the sense that such a determination would fix the rights of the parties with respect to that amount. All that the referee was required to do, as has been said already, was to determine whether the plaintiff had any claim.

In the course of this determination it was essential to decide whether a joint enterprise between the parties existed, and the referee found that it did. We are of opinion that this was a conclusive determination of that issue and that the judge was bound by it. It was a matter not only put in issue, but also necessarily involved in the inquiry before the referee and was actually tried and determined by him. *Spector* v. *Callahan*, 273 Mass. 293, 296. *Cochrane* v. *Cochrane*, 303 Mass. 467, 470, and cases cited. See *Sage* v. *McAlpin*, 11 Cush. 165.

The plaintiff contends that it was error for the judge to admit the testimony of the referee to the effect, in substance, that the latter formed an opinion and that, if he had been required to find as a fact, he would have found that there was a "partnership or joint adventure," and that if he had been required to make "findings of fact," which he did not make, it was perfectly clear in his mind that the loss of the building operations (that were the subject matter of the joint enterprise) "built up a counter-claim against the . . . [plaintiff] vastly in excess of their claim against . . . [the defendant], and as a result of that . . . [he] disallowed the claim in full, and no petition for review was ever taken." The judge inferred from this reference to the requirement of making findings of fact that the referee had in mind, "not the mental process of fact finding but the reduction of it to writing in a document to be filed of record in the case, like the statutory finding of material facts in equity proceedings." The plaintiff concedes that "While that testimony may have qualified as evidence of what the issues were . . . it was too indefinite and left too much to surmise and conjecture to qualify as evidence of what was there determined." We are of opinion that the plaintiff cannot be heard to complain. It could be shown by extrinsic evidence what issues were heard and determined by the referee. *Cote* v. *New England Navigation Co.* 213 Mass. 177, 181. Furthermore, it does not appear that the judge was asked to limit the evidence which the plaintiff concedes was admissible. See *Indrisano's Case*, 307 Mass. 520, 523.

Finally, the plaintiff contends that, if the decree in the case at bar is affirmed, it will be compelled to "answer in damages twice to the amount" of its claim. We must assume that the judge instructed himself properly as to the law, and that his findings of the amounts due from the plaintiff, in the absence of anything shown to the contrary, are in accord. It is contended that his findings result in the plaintiff having been before two tribunals, in neither of which has it been able to establish or receive credit for the amount of its claim, which, it is assumed, was a valid one. It appears from the record that it was agreed that the claim of the plaintiff was barred by the proceedings in the bankruptcy court and that "the case went forward on the defendant's counterclaim as amended." It also appears in the statement of the judge that inasmuch as the referee did not determine specifically "either what the joint venture included or how great was the indebtedness of the . . . [plaintiff] which resulted from it . . . it seems . . . that as to its scope and financial results the plaintiff . . . ought not to be foreclosed from further evidence or argument upon both these points." The evidence is not reported for the reason that the plaintiff itself did not desire to have it. Accordingly we are unable to determine what "further evidence" was presented and we have no means of knowing whether by "argument" before the trial judge the decisions relating to set-off in bankruptcy were discussed. See *Cromwell* v. *Parsons*, 219 Mass. 299; *Digney* v. *Blanchard*, 229 Mass. 235; *In re Harper*, 175 Fed. 412; *Clifford* v. *Oak Valley Mills Co.* 229 Fed. 851, 852; *In re American Paper Co.* 243 Fed. 753; *Prudential Ins. Co.* v. *Nelson*, 101 Fed. (2d) 441; *Connolly* v. *National Surety Co.* 35 Ohio App. 76; *McNeese* v. *Page*, 29 S. W. (2d) 489. See as to counterclaim, *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 607–609. It cannot be said that the judge's findings as to the losses resulting "from the joint venture" are wrong.

There are obvious errors of arithmetic, not only in the order for the decree, but also in the final decree, none of which has been called to our attention in argument. Very

likely these errors will be adjusted when the interest is computed, as it must be, to the date of the entry of final decree after rescript.

The result is that, subject to the interest being recomputed, the final decree is affirmed.

*Ordered accordingly.*